UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:04CV-175-M

**FRANCIS RINEY AND WINIFRED RINEY**                                                    **PLAINTIFFS**

v.

**MARK MENDENHALL and**
**PACIFIC LIFE INSURANCE COMPANY**                                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion for summary judgment filed by Defendant Pacific Life Insurance Company ("Pacific Life"). [DN 59]. The Plaintiffs, Francis and Winifred Riney, in Count VII of their Amended Complaint, claim that Pacific Life was negligent in mailing a loan proceeds check to their agent, Mark Mendenhall, and by issuing insurance policies which were not suitable for their needs. Further, in Count VIII, the Plaintiffs allege that under the doctrine of respondeat superior Pacific Life is liable for the torts of agent Mendenhall. Pacific Life moves for summary judgment arguing that 1) Pacific Life owes no duty to the Plaintiffs to act as a reasonable insurance company; 2) that Pacific Life did not have fiduciary relationship with the Rineys; 3) that Pacific Life did not have a duty to advise the Rineys; 4) that the Rineys suffered no damage; and 5) the actions of Mark Mendenhall relating to the Rineys' investments in non-life insurance products were outside the scope of his agency relationship with Pacific Life. (DN 59). For the reasons stated below, Pacific Life's motion for summary judgment is **GRANTED in part and DENIED in part.**           **I. FACTS**

Mark Mendenhall, a defendant in this lawsuit, was an insurance agent for Pacific Life. On August 7, 1996, he entered into a contract with Pacific Life in which it was agreed that he would

"procure applications for [Pacific Life's] insurance products." (DN 59, Exhibit A, Section I.A.) The Plaintiffs, an elderly couple now in their eighties, first met Mr. Mendenhall in the 1990's, when he became their health insurance agent. In 1996, the Rineys purchased a Pacific Life Insurance Policy from Mr. Mendenhall. This policy had a death benefit of $600,000 upon the death of the second spouse. (DN 59, Exhibit D). In 1998, someone signed Mr. and Mrs. Riney's names on a "Loan or Withdrawal Request" seeking the "maximum loan check." (DN 59, Exhibit G). On January 7, 1999, Pacific Life issued a check in the amount of $171,611.13, made payable to the Rineys, and mailed it to Mr. Mendenhall for delivery to the Rineys. (Exhibits H, I). Someone signed Mr. and Mrs. Rineys' names on the back of this check and indicated it was to be deposited to "Yucatan Investment Corporation" for the benefit of Francis G. Riney. (DN 59, Exhibit H). Then, on March 4, 1999, the Rineys applied for a second "second-to-die" life insurance policy through Mr. Mendenhall and Pacific Life approved that application was on June 11, 1999. (DN 59, Exhibit K). Until March 2, 2002, when the Rineys' first Pacific Life Insurance Policy lapsed, the Rineys were covered by these two "second-to-die" Pacific Life insurance policies. On May 2, 2005, Mr. Mendenhall's license to sell insurance in Kentucky was revoked (DN 59, Exhibit S) and, in April 2006, Pacific Life terminated its relationship with Mr. Mendenhall.(DN 59, Exhibit U, Sue Derego Depo., p. 17, ¶¶ 15-21).

      The Rineys allege that they first met Mr. Mendenhall in 1989 or 1990 when he visited their home and offered to sell them insurance. (W. Riney Dep., pp. 11-12; F. Riney Dep., p.9). Because the Rineys already had insurance, they did not purchase any from Mr. Mendenhall that night.(W. Riney Dep., pp. 12, 14-15). However, Mr. Mendenhall continued to visit them, and on his third or fourth visit, the Rineys bought health insurance from him. (W. Riney Dep.p. 12; F. Riney Dep., p.

10).  When the Rineys wanted to use their health insurance they would call Mr. Mendenhall or send him their medical bills and he would file their health insurance claims for them. (W. Riney Dep., pp. 69-70).

Mrs. Riney testified that, over the course of several years, she and Mr. Riney came to like and trust Mr. Mendenhall and that they eventually shared with him the information he often asked about regarding their financial situation. (W. Riney Dep., pp. 75-76, 80-81.)  Mr. Riney testified that, subsequently, Mr. Mendenhall advised them to cash out their savings, bonds, and certificates of deposit so that he could invest their money for them, and the Rineys complied.. (F. Riney Dep., p. 15).

According to the Rineys, it is in the context of this relationship with Mr. Mendenhall, that they purchased their first life insurance policy from Mr. Mendenhall. It was a Pacific Life policy. They further testified that they did not ask Mr. Mendenhall to take out a loan against this life insurance policy and that they did not know that he did so. (W. Riney Dep., p. 21-22, F. Riney Dep. pp. 19, 22). The loan was taken out for an amount equal to the policy's maximum loan value. (Rose Mirasol Dep., p. 24). The Rineys also do not remember instructing Pacific Life to deliver the check to Mr. Mendenhall or ever receiving the loan check from anyone. (W. Riney Dep., pp. 25-26; F. Riney Dep., pp. 23, 81). Finally, the Rineys do not recall applying for a second Pacific Life policy. (W. Riney Dep. p. 27, F. Riney Dep., pp. 130-131). According to the Rineys, this application stated that the Rineys had 1.6 million dollars in assets, even though they do not (W. Riney Dep., pp. 28,30; F. Riney Dep., p. 26), and no one from Pacific Life ever contacted them to verify this information. (W. Riney Dep., p. 47).  The Rineys paid $449, 844.60 in premiums for this second "second-to-die" Pacific Life insurance policy. (W. Riney Dep., p. 36).

## II. LEGAL STANDARD

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce genuine facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  Here, the non-moving party claims that there are material facts in dispute (Response, DN 70, p. 2-6), while the movant, Pacific Life, seems to contend that although there may be facts in dispute, they are not material. (Reply, DN 73, p.2).

As to undisputed facts, a moving party may discharge its initial burden to support a grant of summary judgment by showing that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has done this, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, Inc., 477 U.S. at 252.

## III. DISCUSSION

The Plaintiffs concede that Pacific Life cannot be held liable for damages the Rineys sustained as a result of the non-life insurance investment decisions facilitated by Mr. Mendenhall because in these instances he was acting outside the scope of his agency relationship with Pacific

4

Life. Therefore, to the extent such claims are alleged by the Plaintiffs, summary judgment is hereby granted in favor of Pacific Life. The Court will now turn to the remaining claims to which Pacific Life argues it is entitled to summary judgment.

Count VII of the Plaintiff's Amended Complaint alleges that Pacific Life negligently breached its duty to act as a reasonable insurance company by mailing a loan proceeds check to Mendenhall and not to the Rineys. The Court can find no authority which generally requires an insurer to act "reasonably." Although, in Kentucky, there is an implied covenant of good faith and fair dealing within every contract, the law does not seem to impose any other direct duty upon insurance companies with respect to insureds upon which a negligence claim can rest.. See, e.g., Farmers State Bank and Trust Co. of Georgetown v. Willmott Hardwoods, Inc., 171 S.W.3d 4 (Ky. 2005). For this reason, the Court grants Pacific's Life motion for summary judgment as to the Rineys' negligence claim regarding the mailing of the loan money to Mendenhall.

In their supplemental briefing, the Plaintiffs assert that Pacific Life has violated the duty of good faith and fair dealing. The Plaintiffs argue that given the wrongful conduct engaged in by its agent, there is at least a question of fact as to whether Pacific Life did everything necessary to carry out the terms of the insurance contract. Despite this argument, a contract claim has not been asserted by the Plaintiffs in either the initial Complaint or the amended one.

The remainder of Count VII complains that Pacific Life was negligent in issuing policies not suitable to the Rineys' needs. Although not specifically stated in the complaint, Plaintiffs' claim in this regard is premised on the assertion that Pacific Life owed a duty to the Rineys to advise them as to their insurance needs.

Generally, an insurer and its agents owe no duty to advise an insured. However, in Mullins

v. Commonwealth Insurance Company, on which both parties rely, the Supreme Court of Kentucky held that an "an insurer may assume a duty to advise an insured when...there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on..." 839 S.W.2d 245, 248 (Ky. 1992) (citing Trotter v. State Farm Mut. Aut. Ins. Co., 297 S.C. 465 (S.C. Ct. App. 1988).

Count VII of the Amended Complaint appears to allege direct negligence as to Pacific Life. In this regard, there is no evidence in the record that Pacific Life took any action which would establish a special relationship between it and the Rineys thereby imposing upon Pacific Life a duty to advise.

The Plaintiffs' claim in this regard seems more aligned with the allegations in Count VIII of the Amended Complaint which, under the doctrine of respondeat superior, seek to hold Pacific Life liable for the actions of its agent, Mendenhall, since he developed a special relationship with the Rineys. Although Pacific Life argues that Mendenhall did not have a special relationship with the Rineys sufficient to trigger a duty to advise, there is ample evidence to the contrary. To the extent that Pacific Life's motion seeks summary judgment on the claim that Mendenhall had a special relationship with the Rineys, it is denied. For purposes of this motion, the Court will assume that Mendenhall's course of dealing with the Rineys imposed upon him, at least, a duty to advise. Therefore, the remaining question is whether Pacific Life is liable for Mendenhall's personal failure to properly advise the Rineys.

Kentucky Revised Statute 304.9-034 provides that an "insurer shall be responsible for the acts of its agents when the agents are acting in their capacity as representatives of the insurer and are acting *within the scope of their authority.*" (emphasis added). In Kentucky, for an act to have

been committed within a "scope of authority" that act must have been committed "while the employee was engaged in furthering his employers business or interests, without any deviation by the employee to a pursuit of his own business or interest, and there must have been a general similarity between the tortious act committed and the usual, ordinary, everyday acts commonly pursued by the employee in prosecuting the regular routine of his employment." Patterson v. Blair, 172 S.W.3d 361, 368 (Ky. 2005) (quoting Wood v. Southeastern Greyhound Lines, 194 S.W.2d. 81, 83 (Ky. 1946)). Further, the "conduct must be of the same general nature as that authorized or incidental to the conduct authorized. A principal is not liable under the doctrine of respondeat superior unless the intentional wrongs of the agent were calculated to advance the cause of the principal or were appropriate to the normal scope of the operator's employment." Osborne v. Payne, 31 S.W.3d 911, 915 (Ky. 2000). And, finally, if a servant "acts from purely personal motives...which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." Patterson, 172 S.W.3d at 369 (quoting Prosser and Keeton on the Law of Torts, 506 (5th Ed. 1984)).

Based on the foregoing principals, the Court finds that Pacific Life never assumed a special duty to advise the Rineys, either in its own capacity or as the principal of Mr. Mendenhall. There is no evidence to suggest that giving financial advice was within the scope of authority granted to Mr. Mendenhall as an agent of Pacific Life. Rather, Mr. Mendenhall's authority was limited to procuring insurance applications. Further, the special relationship that was created here was between Mr. Mendenhall and the Rineys. The facts suggest that it was created by Mr. Mendenhall, not to further the interests of Pacific Life, but to further his personal financial interests. When Mr. Mendenhall developed his special relationship with the Rineys, he was acting from "purely personal

7

motives" which were in no way connected to Pacific Life's interests nor authorized by it. Patterson, 172 S.W.3d at 369. Thus, although Mr. Mendenhall may have assumed a personal duty to advise the Rineys in the course of his relationship with them, Pacific Life never did.

The Plaintiffs argue that Pacific Life is bound by the acts of its agent performed within the scope of the agent's apparent authority even though the agent's actual authority may be limited. Apparent authority may be created by conduct of the principal which causes a third person to believe that the principal consents to have acts done on its behalf by the agent purporting to act for it. Union Central Life Ins. Co. v. Glasscock, 110 S.W.2d 681, 685 (Ky. App. 1937). Here, the Court finds no evidence to suggest that Pacific Life took actions which could have caused the Rineys to reasonably believe that it had authorized Mr. Mendenhall to give financial advice on its behalf. Indeed, the evidence suggests that Mr. Mendenhall developed his special relationship with the Rineys - which involved providing the Rineys with financial counseling and selling other insurance policies to them - long before he sold them a Pacific Life insurance policy. Therefore, the Court concludes that the alleged tortious conduct here - the breach of the duty to advise the Rineys - was committed by Mr. Mendenhall outside the scope of his actual or apparent authority with Pacific Life, and, thus, Pacific Life is entitled to summary judgment on this claim.

The Court has endeavored to address those claims identified by the parties in their motion papers. However, the allegations of Count VIII against Pacific Life are very broad and this opinion only grants summary judgment as to the claims discussed above. Specifically, the Court grants summary judgment to Pacific Life as to any claim that it had a duty, directly or vicariously, to advise the Rineys as to whether they should purchase the two policies in question. It also grants summary judgment on the negligence claim that Pacific Life was directly or vicariously liable for sending the

loan proceeds check to Mendenhall.

Importantly, however, the Plaintiffs also assert in their complaint that Mendenhall misrepresented material facts in connection with the sale of the insurance policies. The Court is concerned that the parties have been so focused on the "duty to advise" question that they have not concentrated sufficiently on what evidence exists, if any, as to misrepresentations made by Mendenhall in connection with the sale of these policies which would be binding upon Pacific Life under KRS 304.9-034. Therefore, the Court is reluctant to grant summary judgment on any such claims at this juncture and the Defendant is invited to direct a new dispositive motion specifically addressed to any such claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant Pacific Life's motion for summary judgment is **GRANTED in part and DENIED in part.**

cc: Counsel of Record