UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:04CV-175-M

**FRANCIS RINEY AND WINIFRED RINEY**                    **PLAINTIFFS**

v.

**MARK MENDENHALL and**
**PACIFIC LIFE INSURANCE COMPANY**                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a second motion for summary judgment filed by the Defendant Pacific Life Insurance Company ("Pacific Life"). Pacific Life argues that the Plaintiffs' claim that it is vicariously liable for the alleged misrepresentations of its agent must fail. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion is **GRANTED**.

### I. FACTS

In a Memorandum Opinion entered on February 13, 2007, the Court granted summary judgment in favor of Pacific Life on all of the Rineys' claims except the claim that Pacific Life's agent, Mark Mendenhall, made material misrepresentations to the Rineys in connection with the sale of Pacific Life insurance policies. The current motion seeks summary judgment on the remaining claim. The facts of this case are fully stated in the earlier opinion and there is no need to restate them here.

### II. LEGAL STANDARD

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving

party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce genuine facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

As to undisputed facts, a moving party may discharge its initial burden to support a grant of summary judgment by showing that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has done this, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, Inc., 477 U.S. at 252.

### III. DISCUSSION

In Kentucky, an "insurance company shall be liable for the acts of its agents when the agents are acting in their capacity as representatives of the insurance company and are acting with the scope of their authority." K.R.S. 304.9-020. In Pan-American Life Insurance Company v. Roethke, 30 S.W.3d 128 (Ky. 2000), the Kentucky Supreme Court held that an insurance company is liable "when an agent acts within the scope of his authority, the insured reasonably relies on that act, and the reliance constitutes the cause of the insured's damage." 30 S.W.3d at 132-33. Accordingly, in Kentucky, when an insurance agent makes affirmative misrepresentations about the coverage of an insurance policy, and the insured relies upon those misrepresentations to their detriment, an insurance company may be liable for the insured's injury. Id. at 133.

The Rineys argue that the following acts of Mr. Mendenhall constitute misrepresentations for which Pacific Life is liable: 1) Mendenhall told the Rineys that the Pacific Life "second-to-die" life insurance policies were appropriate for their needs; 2) Mendenhall told the Rineys that the first Pacific Life insurance policy was self-supporting after the payment of the premium; 3) Mendenhall procured a loan against the first Pacific Life insurance policy without the knowledge or consent of the Rineys; and 4) Mendenhall purchased a second Pacific Life insurance policy on behalf of the Rineys without their knowledge or consent. The Court will address each of these arguments in turn.

First, there is no direct evidence in the record to indicate that Mendenhall ever represented to the Rineys that the Pacific Life "second-to-die" life insurance policies were appropriate for their needs. However, there is, of course, evidence that he sold them this type insurance. Therefore, one can assume that he told the Rineys that the product would achieve the goals they had discussed. Although they regret their decision now, the deposition testimony shows that the Rineys wanted to leave $50,000 to each of their children upon their deaths and this insurance was one way to achieve that goal. Mr. Riney testified that he knew the insurance was payable only after they both had died. He also knew that life insurance at their age was expensive, but he thought "as things would come through and pay off, that we'd have money to handle the insurance." (F. Riney Depo. P. 80). Perhaps second-to die life insurance was not the best way to achieve the Riney's estate planning goals, however, as the Court has previously held, Pacific Life undertook no duty to advise the Rineys. Thus, Pacific Life faces no liability even if the advice Mendendall gave the Rineys was poor. There is no evidence to support the Rineys' claim of misrepresentation under these facts and Pacific Life's motion for summary judgment on this aspect of the Riney's claim is granted.

The Rineys next assert that Mr. Mendenhall misrepresented material facts in connection

with the first Pacific Life insurance policy when he told them that it would be self-supporting after they had paid the initial premium. Even though the Rineys understood that if they did not pay their premiums, their insurance would lapse, (DN 100, Ex. C, Winifred Riney Dep. p. 80), they claim that Mr. Mendenhall explained to them that the policy would be self supporting. Pacific Life argues that the Rineys could not have reasonably believed the policy was self-supporting because they made a total of ten payments over a period of a year and a half. (DN 100, Ex. E). Unfortunately, the Rineys are not able to remember exactly what was represented to them by Mendenhall. Mr. Riney testified that Mendenhall told him the insurance would "be self-supporting in some way and for some time...and then we'd have to go to paying. I forget now what the deal was..." (DN 100, Ex. 3, F.G. Riney Dep., p. 29). Pacific Life argues that even if Mr. Mendenhall did convey the above, it was not a misrepresentation because the policy was self-supporting for almost four years, even after the loan was withdrawn. It appears that the Rineys knew that at some point they would "have to go to paying" in order to keep the policy in force. In light of the Riney's inability to remember, and thus, prove the precise representation made as to the self-supporting nature of the policy, this aspect of their claim also fails.

Finally, the Rineys claim that Pacific Life is liable under the theory of agent misrepresentation for Mr. Mendenhall's procurement of a loan against the Rineys' first Pacific Life policy without their knowledge or consent and for his purchase of a second Pacific Life insurance policy on behalf of the Rineys without their knowledge or consent. However, even assuming that both of these acts occurred, Pacific Liable is not liable for them under the theory of agent misrepresentation. First, these acts can hardly be classified as misrepresentations. Second, even if they did constitute misrepresentations, under Roethke, an insurer is only liable for the acts of the

4

agent that are committed within the scope of the agent's authority. 30 S.W.3d. at 132. Neither taking out a loan on the Rineys' behalf without their knowledge, nor procuring a second life-insurance policy without their knowledge, was within the scope of the authority granted to Mr. Mendenhall by Pacific Life. Accordingly, the Court grants summary judgment as to both of these claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendant Pacific Life's second motion for summary judgment is **GRANTED.**

cc: Counsel of Record